## Commonwealth ex rel. Adams v. Bishop.

*Election law — Counting votes — Person voted for under two different names—Acts of June 10, 1893, P. L. 419, April 29, 1903, P. L. 338, and July 9, 1919, P. L. 829.*

Where two candidates are to be voted for, for two offices, and it appears that "Emma Adams" was the regularly nominated Republican candidate, and that no candidates had been named by the Prohibition Party, but that a number of persons wrote the name of "Mrs. J. Q. Adams" on their ballots as a Prohibition candidate, the ballots for "Emma Adams" and those cast for "Mrs. J. Q. Adams" cannot be added together and credited to "Emma Adams," although she was the same person as "Mrs. J. Q. Adams."

Petition for *quo warranto.* C. P. Jefferson Co., Jan. T., 1926, No. 232.

*Raymond E. Brown* and *W. B. Adams,* for petitioner; *J. C. Long,* contra.

DARR, P. J., April 29, 1926.—A number of interesting questions are involved in this case, particularly whether or not *quo warranto* is the proper remedy, whether or not the petitioner is not bound to contest the election, whether or not the time for such contest has not expired, and whether or not the votes cast for "Emma Adams" and those cast for "Mrs. J. Q. Adams" should be added together and credited to the petitioner, which would have changed the result of the election. In our view of the case, the last question stated is the only one which is deserving of consideration under the peculiar circumstances of this case.

Commonwealth ex rel. Adams v. Bishop.

The fact seems to be undisputed that "Emma Adams" and "Mrs. J. Q. Adams" are one and the same person; that "Emma Adams," the petitioner, was one of the regularly nominated Republican candidates; that no candidates were named by the Prohibition Party and none were placed on the official ballot; and that a number of persons wrote the name of "Mrs. J. Q. Adams" as a Prohibition candidate. It is also undisputed that the election boards of both the election precincts of Bell Township credited the petitioner with 178 votes, which total was reached by adding the votes cast for "Emma Adams" and those cast for "Mrs. J. Q. Adams" together. The Clerk of the Court of Quarter Sessions issued a certificate to Charles W. Bishop, on the ground that the petitioner should not be credited with the votes cast for "Mrs. J. Q. Adams," by which method of computation the petitioner received only 139 votes and Charles W. Bishop 141 votes, Otto Grube having received the highest number, or 159 votes. As there were but two persons to be elected as school directors, certificates were issued to Otto Grube and Charles W. Bishop, in accordance with the method of calculation followed by the Clerk of the Court of Quarter Sessions. Hence, this petition, which complains of the action of the said Clerk in failing to credit the petitioner with all the votes cast for both "Emma Adams" and "Mrs. J. Q. Adams." We regard the law as settled adversely to the petitioner in a case very nearly analogous to the present one, viz., that of Carothers's Election Contest, 25 Dist. R. 1151, the only difference being that in the Carothers's case the name of the petitioner was written two ways upon the official ballot, whereas, in the present case, the name of "Mrs. J. Q. Adams" was not on the official ballot at all, but only the name of "Emma Adams." The opinion in the Carothers's case is so appropriate to the present controversy that we adopt it as our opinion. We quote as much as is applicable to the present issue:

"The only question properly raised is whether or not the votes cast for Oscar Tillbrook, who was a candidate on the Citizens' ticket, should have been credited to Oscar T. Tillbrook, who was a candidate upon the Republican ticket, or vice versa. The petitioners aver that this should have been done. But the difficulty with this proposition is that it involves a violation of the election laws. If their request be granted, the plain words of a statute must be disregarded. No matter how many nominations a man may obtain, his name can only appear once upon the official ballot. Section 14 of the Act of June 10, 1893, P. L. 419, as amended by the Act of April 29, 1903, P. L. 338, specifically provides: 'Whenever any candidate shall receive more than one nomination for the same office, his name shall be printed once, and the name of each political party so nominating him shall be printed to the right of the name of such candidate, arranged in the same order as the candidates' names are grouped. . . .'

"Plainly, one of the purposes of this provision is to prevent cumulative voting where each elector has the right to vote for more than one candidate, as he had in this instance. It is a wise regulation, intended to frustrate fraud, and it ought to be strictly enforced. Remembering that the manner of conducting elections is minutely prescribed by law, it seems to us that, where a man's name appears more than once upon an official ballot as the candidate of different parties, it must be presumed that they are different persons."

An apparently different conclusion was reached in the case of Quinn's Contested Election, 14 Dist. R. 386, but in that case only one candidate was to be voted for, and the mischief pointed out in the Carothers's case could not occur. A moment's reflection will demonstrate the wisdom of the rule denying the right of a person voted for under two or more names or derivations

to show that the several names were intended to designate one person where more than one candidate is voted for for the same office. Thus, to admit proof that "Emma Adams" and "Mrs. J. Q. Adams" were one and the same person, and upon such proof to credit her with the votes cast for her under both names, would be to open the door to palpable fraud and establish a very dangerous precedent. While we do not mean to cast any reflection upon the voters in Bell Township, yet it goes without saying that if any voter had been so disposed he might have cast a vote for "Emma Adams" and one for "Mrs. J. Q. Adams," and this might have been allowed and the votes counted, unless the election officers knew that the elector had cast two votes for one and the same person. Frauds of this kind would be more likely to occur in large and thickly populated precincts where the election officers might not be well acquainted with all the candidates. Again, fraud and corruption in the conduct of elections where the election officers, as well as voters, would combine to procure an unfair election and defeat the will of the people would be much more easy of accomplishment and more difficult to detect where more than one candidate was voted for for the same office and the votes were cast for the same person under different names.

Another feature of this election must not be overlooked. In paragraph 6 of the petition it is alleged that, "at said general election held on Nov. 3, 1925, the petitioner's name appeared and was printed on the official ballot used at the same, as a candidate of the Republican Party for the office of school director. . . ." Paragraph 8 alleged that the "Prohibition Party made no nominations at said primary election, but spaces were reserved on said official ballot as provided by law where electors might write or paste the names of two persons for whom they desired to vote for said office." Paragraph 9 showed that the Election Board of "Bell, North" Election District returned, among other things, that " 'Emma Adams,' Republican, had 76 votes for the office of school director. . . . . 'Mrs. J. Q. Adams,' Prohibitionist, had 23 votes." Paragraph 10 of the petition indicated that the Election Board of "Bell, South" Election District returned that " 'Emma Adams,' Republican, had 63 votes. . . . 'Mrs. J. Q. Adams,' Prohibitionist, had 16 votes."

It follows that 23 votes in "Bell, North" and 16 votes in "Bell, South" were cast for "Mrs. J. Q. Adams" as a Prohibition candidate; in all, 39 votes. These 39 votes must have been written or pasted on the ballots, as no Prohibition candidate was printed on the ballots for school director. It is also averred that the name of "Emma Adams" did appear on the official ballot as the Republican candidate. Her name, therefore, appearing on the official ballot could not have been written or pasted in any of the blank spaces on the ballot except in violation of section 1 of the Act of July 9, 1919, P. L. 829, 8 Purdon, 8275, § 217, which provides, *inter alia:* "He may vote . . . for the candidate of his choice . . . or he may insert in the blank space provided therefor, in accordance with section 14 of this act, *any name not already on the ballot.*"

Section 14, referred to, amended by section 2 of the Act of April 29, 1903, P. L. 341, 2 Purdon, 1349, § 148, provides, *inter alia:* "There shall be left . . . as many blank spaces as there are persons to be voted for for such office, in which space the voter may insert the name of *any person whose name is not printed on the ballot as a candidate for such office.*"

If the 39 electors whose votes the petitioner desired to have added to her list had intended to cast their ballot for some person other than "Emma Adams," then they could not under any circumstance be credited to the petitioner. If, however, they intended to vote for "Emma Adams," they should have put the (X) opposite her name on the official ballot instead of writing

either "Emma Adams" or "Mrs. J. Q. Adams" in the place where the same was found.

And now, April 29, 1926, after due and careful consideration of all the matters and things averred in the petition and answer thereto, it is ordered and adjudged that the petition be dismissed; further, that the offices, franchises, liberties and privileges claimed by Charles W. Bishop are allowed to him, together with costs.